SAFEWAY STORES, INCORPORATED v. WILLIAM ED WHITE

No. A-8247. Decided June 21, 1961
Rehearing overruled July 19, 1961
(348 S. W. 2d Series 162)

*Thompson, Knight, Wright & Simmons, David S. Kidder, Pinkney Grissom* and *Timothy E. Kelly,* all of Dallas, for petitioner, Safeway Stores.

*Carter, Gallagher, Jones & Magee, Ben T. Warder, Jr.,* and *Joe Hill Jones,* all of Dallas, for White.

MR. JUSTICE WALKER delivered the opinion of the Court.

William Ed White, plaintiff, brought this suit against Safeway Stores, Inc., defendant, to recover for personal injuries sustained by the plaintiff when he was pinned by a Safeway truck against the wall of defendant's store in Corsicana. Plaintiff's compensation insurance carrier intervened, but its presence as a party has no bearing on the question to be decided.

All grounds of recovery except discovered peril were waived, and plaintiff sought to establish liability by showing that L. C. Clark, manager of the grocery department in the Corsicana store, discovered him in a position of peril and failed to exercise ordinary care in using the means at hand to prevent the

accident. No contention was made that the truck driver, Porter L. Sanford, even knew of plaintiff's presence before the latter was injured. In response to Special Issue No. 2, the jury found that Clark discovered and realized before the accident that plaintiff occupied a position of peril. All other issues were answered in plaintiff's favor, and the trial court rendered judgment on the verdict. The Court of Civil Appeals reversed and remanded the cause for a new trial because it concluded that the jury's findings are contrary to the overwhelming weight and preponderance of the evidence. 342 S.W. 2d 137.

Plaintiff and defendant each applied for writ of error, and both applications were granted. Defendant contends that there is no evidence to support the jury's answer to Special Issue No. 2. It also says that judgment should have been rendered in its favor because Clark was not in control of the instrumentality inflicting the injury and owed plaintiff no duty with respect thereto. Plaintiff asserts that in passing on the weight and preponderance of the evidence the Court of Civil Appeals improperly considered testimony relevant only to contributory negligence or the doctrine of volenti non fit injuria. We agree with defendant that Special Issue No. 2 is not raised by the evidence, and it is therefore unnecessary to consider the other points of error brought forward by the parties.

Defendant's brick store building in Corsicana faces east. The accident occurred about ten o'clock in the morning near a door in the south wall of the building. This door, which opens into the stock room, is about four feet wide and is located some fifteen or twenty feet from the southwest corner of the building. On either side of the doorway is a large bump post set in the ground a few inches away from the brick wall. Immediately south of the building is a paved area used for customer parking and also for trucks that are unloaded at the door. An alley extends along the west edge of the parking lot and the west or rear end of the building.

On the morning in question Sanford had driven the Safeway truck, a large, van-type, tractor-trailer unit, from Dallas with a load of merchandise for the Corsicana store. Prior to plaintiff's arrival on the scene, he began moving the truck into place for unloading. He backed toward the building with the truck in a jackknife position. The trailer was aimed at and perpendicular to the south doorway with the tractor angled to the left or east. He brought the vehicle to a temporary halt when the rear of the

trailer was some distance from the building. After opening the trailer doors, he returned to the cab and began backing very slowly toward the bump posts. Clark, who had broken the seal on the trailer doors, was standing near the door into the building.

At about the time Sanford started this second backward movement, plaintiff drove his panel truck from the street south of the paved area into the alley and parked behind the building. He was a salesman for Housewares Distributors and sold kitchenware to defendant and other stores in Corsicana. While driving up the alley he saw Clark standing just outside the south doorway. Although plaintiff had previously used a door near the northwest corner of the store, on this occasion he went around the building toward Clark. While attempting to enter the building through the south doorway, he was pinned by the right rear of the trailer against the wall near the west bump post. Sanford stopped his vehicle when he "heard the fellows hollering," and later learned for the first time of plaintiff's presence.

Discovered peril clearly has no place in the case if plaintiff's version of the events occurring immediately prior to the accident is correct. He relies upon Clark's testimony, however, and we are considering the evidence in the light most favorable to the plaintiff. Clark stated that he first saw plaintiff when the latter was driving up the alley. The rear of the trailer was then about ten or twelve feet from the building. Its doors had been opened. The truck was backing slowly and continued to do so until plaintiff was injured. When next seen by Clark, plaintiff was approaching the doorway on foot. He was "in a little run, — wasn't really running fast, but just in a little trot." Plaintiff "hollered and told me he was going to Brookshire's and that he would be back." Brookshire's is another store in Corsicana. The fact that plaintiff did make a statement about Brookshire's which could have been taken by Clark as indicating an intention not to work the Safeway store at that time is confirmed by plaintiff's own testimony.

Instead of turning back toward his panel truck, however, plaintiff continued to approach Clark. He did not slow his gait but remained "in that little run" and was looking at Clark at all times while the latter was watching him. The truck continued backing and the plaintiff kept running. When plaintiff was about six or eight feet away and the truck was some five

or six feet from the building, Clark turned around to lay down his papers. Upon turning back he found the plaintiff pinned against the building. He then yelled and the truck stopped. When asked whether he realized that there was any danger when he turned away, Clark answered "No, sir, I didn't have any idea that he was coming through the door."

■ We agree with plaintiff that it was not incumbent upon him to show that Clark saw him step between the truck and the wall. To raise the discovery issue, it was only necessary to establish that Clark realized the plaintiff was pursuing and would probably continue a course that was likely to result in his being injured. Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561. Plaintiff insists that the evidence raises an issue of fact as to whether or not Clark knew and realized his perilous position because it reasonably appears from the facts and circumstances within Clark's knowledge that the plaintiff in all probability would continue on his course to the door. He argues, in effect, that the jury is entitled to conclude that the injured party's peril was discovered whenever it appears that the defendant should have appreciated the danger. Support for this argument can be found in statements made by some of our appellate courts. See Long v. Surls, Tex. Civ. App., 275 S.W. 2d 728 (wr. ref. n.r.e.) ; Cohen v. Morreale, Tex. Civ. App., 308 S.W. 2d 63 (wr. ref. n.r.e., 158 Tex. 291, 310 S.W. 2d 737). It has also been said by at least one writer that under our holding in Creech v. Thompson, 156 Tex. 561, 297 S.W. 2d 817, a plaintiff apparently is entitled to an issue on discovered peril when it is established that the defendant could have seen his peril. See 12 Southwestern Law Journal 137.

The situation of the two workmen in the Creech case was such that anyone seeing them and recognizing that they were men could not fail to be aware of their peril. According to the testimony of the fireman, he saw objects on the bridge when the train was some 1040 feet from the point of collision, but he did not realize that they were men until about five seconds later. The evidence showed, however, that an object could be recognized as a man at a distance of three-fourths of a mile. In other words, anyone in the fireman's position who looked might have identified the objects as men when the train was nearly 4000 feet away, and as the distance diminished this possibility eventually would become a probability. We were there dealing, moreover, with a person of some experience who was on the train for the purpose, among others, of observing and identifying any-

thing that might be on the track. It was held that under these circumstances the jury was justified in concluding that realization actually occurred when the fireman first saw the objects on the bridge. Although we were not in agreement as to the inferences that might properly be drawn from the facts proven, the majority did not say or hold that discovered peril is raised by evidence showing only that the defendant could have perceived the danger.

■ The "could have" or "should have" standard for measuring the proof required to raise the discovery issue has never been recognized by this Court and will not be adopted now. Actual discovery is an essential element of the doctrine of discovered peril as applied in Texas. If the rule were otherwise, a plaintiff could recover notwithstanding his own contributory negligence by proving that the defendant was guilty of nothing more than primary negligence in failing to discover his peril. The trier of fact is not required to accept the testimony of the defendant or his agent, and discovery may be established by circumstantial evidence. Where there is no direct evidence raising the issue, however, the plaintiff must prove facts and circumstances from which it can fairly be inferred that the defendant did actually become aware of the peril.

■ While the jury was free to disbelieve Clark's statement that he did not realize there was any danger, his testimony in that respect is not evidence that the opposite of what he said is true. See R. T. Herrin Petroleum Transport Co. v. Proctor, 161, Tex. 222, 338 S.W. 2d 422. There is no other direct evidence bearing on the question, and the facts and circumstances proven do not point to realization on his part. Casually turning around to lay down some papers is not the conduct of one who has just realized that a business acquaintance only a few feet away is in danger of serious injury. At the time Clark turned his back, plaintiff was six or eight feet away and approaching at a little trot. The latter was not in such immediate danger that anyone seeing him would necessarily have been aware of the peril. In view of the size of the truck, the noise of its engine, and the distance from the moving vehicle to the doorway where plaintiff was looking, Clark had good reason to believe the plaintiff was fully cognizant of the truck and its movement. Plaintiff had not previously entered the building through the south door, and his statement about going to Brookshire's indicated that he did not intend to do so on the occasion in question. While the fact that plaintiff continued to approach at a little trot after making such state-

ment perhaps should have alerted Clark to the danger, it does not constitute evidence that he actually discovered the plaintiff's peril. His testimony that he did not realize the danger is not conclusive, but there is nothing in the record to suggest that he did.

The judgments of the courts below are reversed, and judgment is here rendered that the plaintiff and intervenor take nothing.

MR. JUSTICE SMITH concurring.

I concur in the result. There is no evidence that L. C. Clark discovered and realized prior to the accident in question that the plaintiff, White, occupied a position of peril.

I do not understand White to argue "that the jury is entitled to conclude that the injured party's peril was *discovered* whenever it *appears* that the defendant should have appreciated the danger." [Emphasis added.]

White's basic position seems to be that the evidence on issue No. 2 brought his case within the rule announced in the case of Ford v. Panhandle & Santa Fe Ry. Co., 151 Tex. 538, 252 S.W. 2d 561. White does not contend that the case of Creech v. Thompson, 156 Tex. 561, 297 S.W. 2d 817 is controlling. Therefore, it seems to me that we should let the Creech case speak for itself. White's evidence amounts to no evidence. He contends, however, that the Ford case, supra, is analogous to the facts in the present case. White has not misinterpreted the holding in the Ford case. His only difficulty is that his facts fail to bring him within the rule in Ford.

The Ford case supports White in his contention that it was not necessary for him to prove that Clark must have known that disaster was inevitable unless he averted it.

In the Ford case, this Court wrote at length on this question and, after an exhaustive analysis of applicable cases, this Court said:

"This philosophy as expressed in the Shetter and O'Donnell cases was examined and pointedly and specifically repudiated in 1907 by Chief Justice Gill of the Court of Civil Appeals in an opinion in the case of International & G. N. Ry.

Co. v. Munn, 46 Tex. Civ. App. 276, 102 S.W. 442, 444. Chief Justice Gill characterized the language quoted from the Shetter case and approved in the O'Donnell case as 'loose expressions in cases from courts of the highest authority' and said that the cases actually intended to hold that for a duty of care to one on or approaching a railroad track to arise 'it is not requisite that the engineer must know that disaster is inevitable unless he himself can avert it. It is enough if he knows that the person injured was in a place of danger from which he probably could not or would not extricate himself in time.' Then with respect to the fact situation before the Court — that of a deaf man on a railroad track being hit by a train, which, by way of emphasis of what was said, was the identical fact situation as in the O'Donnell case — Chief Justice Gill wrote: 'In a legal sense and in point of fact it is accurate to say that the peril of one in Munn's position consisted of his ignorance, for there was no time up to within a few feet of the train when he might not have saved himself had the knowledge of its approach been borne in upon his senses.' The Supreme Court refused a writ of error in in the Munn case.

"After the decision in the Munn case, and until it was reasserted in the language quoted from the Napier and Parks cases, the opinions of appellate courts in Texas reflected a singular unanimity in rejection of the 'certain injury' philosophy in the doctrine of discovered peril. * * * "

Safeway and White are in agreement as to the law, but in disagreement as to the probative force of the facts. We agree with Safeway and sustain its no evidence point.

White, incidentally, cites Creech v. Thompson and Morreale v. Cohen, but these cases are only cited for the proposition that Clark, being an interested witness, certain "testimony on his part was simply a conclusion."

In the Ford case, this Court set out the elements of discovered peril and said:

"The quantum of proof required of the plaintiff on these elements of discovered peril in order to entitle him to have them submitted to the jury was such facts and circumstances as taken together with all reasonable inferences therefrom constituted some evidence of probative force of their exist-

ence." Citing White v. White, 141 Tex. 328, 172 S.W. 2d 295; Stevens v. Karr, 119 Tex. 479, 33 S.W. 2d 725.

While recognizing the rule that in determining whether the plaintiff has discharged this burden, the evidence in the record must be considered in its most favorable light to the plaintiff, disregarding all evidence and the inferences therefrom favorable to the defendant, I maintain that there is no evidence, as required, showing that White's evidence measures up to the quantum of proof essential to a recovery.

Obviously, what the writer in the Southwest Law Journal said relative to the Creech case is immaterial. A conclusion as to what was held in that case is unnecessary to a decision in this case.

For the reasons stated, I agree that the judgments of both the trial court and the Court of Civil Appeals must be reversed and judgment here rendered that the plaintiff and intervenor take nothing.